**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SOUTH LOUISIANA ELECTRIC COOPERATIVE ASSOCIATION** | **CIVIL ACTION** |
| **VERSUS** | **NO: 26-159** |
| **VIRGINIA TRANSFORMER CORP.** | **SECTION "H"** |

## ORDER AND REASONS

Before the Court is Defendant's Third Motion to Dismiss (Doc. 20). For the following reasons, the Motion is **GRANTED IN PART**.

## BACKGROUND

This action arises out of Plaintiff South Louisiana Electric Cooperative Association's purchase of two transformer units from Defendant Virginia Transformer Corporation for use at its substation site in Terrebonne Parish. Transformer A was energized on May 13, 2019, and Transformer B was energized on August 28, 2019. Plaintiff alleges that the transformers were purchased pursuant to a contract that contained a 60-month warranty. Plaintiff alleges that the Sudden Pressure Relays ("SPRs") on both units tripped intermittently since their installation. It brings Louisiana state law

redhibition and breach of contract claims against Defendant pursuant to this Court's diversity jurisdiction.

On February 20, 2026, Defendant filed a Motion to Dismiss the claims against it. Plaintiff subsequently filed a Second Amended Complaint, and that Motion was denied as moot.

On March 27, 2026, Defendant moved to dismiss the claims in Plaintiff's Second Amended Complaint, arguing that Plaintiff's redhibition claims are prescribed and that it failed to state a claim for breach of contract. This Court agreed, holding that Plaintiff's redhibition claim was prescribed where prescription began to run in 2019 based on the Second Amended Complaint's allegation that both transformers had been tripping since they were installed. The Court also held that Plaintiff's claim for breach of warranty against defects had to be pursued in redhibition instead of as a breach of contract and that it had not pleaded a breach of the warranty of fitness claim. The Court allowed Plaintiff to amend its Complaint to the extent that it could remedy those deficiencies.

On September 3, 2026, Plaintiff filed a Third Amended Complaint. Defendant responded with its Third Motion to Dismiss, arguing again that

Plaintiff's claims are prescribed and that it has failed to state a claim. Plaintiff opposes. The Court will consider each argument in turn.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[7]

---

[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[2] *Id.*

[3] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[4] *Iqbal*, 556 U.S. at 678.

[5] *Id.*

[6] *Lormand*, 565 F.3d at 255–57.

[7] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

## LAW AND ANALYSIS

Defendant moves for dismissal of Plaintiff's redhibition and breach of contract claims.

### A. Redhibition

Plaintiff alleges that the transformers that it purchased from Defendant have redhibitory defects. Under Louisiana law, "when a defect in the thing sold renders it absolutely useless, or so inconvenient in use that the law supposes a buyer would not have purchased that item had he known of the vice, an action lies in redhibition."[8] Defendant argues that Plaintiff's redhibition claim should be dismissed because it has prescribed. Louisiana Civil Code article 2534 provides, in relevant part, that:

> B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer or ten years from the perfection of the contract of sale, whichever occurs first.
>
> C. In any case prescription on an action for redhibition is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.

"Where the petition shows that the claim has prescribed, the buyer must prove otherwise."[9]

In its first consideration of this issue, this Court held that Plaintiff's redhibition claim was prescribed on the face of the Second Amended Complaint where it stated that the SPRs have repeatedly tripped "since installation" in

---

[8] Manning v. Scott-Hixson-Hopkins, Inc., 605 So. 2d 233, 235 (La. App. 2 Cir. 1992).

[9] Stichberry v. Nolan, 765 So. 2d 1201, 1204 (La. App. 2 Cir. 2000).

2019. The Court found that Plaintiff had therefore known about the defect since that time, and Defendant's attempts to repair the issue came after prescription had already run.

In its Third Amended Complaint, Plaintiff now pleads more vaguely that the SPRs on both transformers tripped "intermittently and on isolated occasions" following their installation.[10] However, the first date that Plaintiff alleges that Transformer A tripped is July 23, 2022, and Transformer B's first trip is alleged to have occurred in October 2023. Plaintiff alleges that "on each occasion of a trip" Defendant repaired the transformers. It alleges that it was unaware that the tripping was the result of a latent internal defect until September 5, 2024, when Defendant completed its attempts at repairs, represented that the transformers were operating within normal parameters, and attributed the tripping to external factors. It alleges that there are many reasons why a transformer may trip and that it could not have known the tripping was caused by a latent defect until this time. Defendant, on the other

[10] Defendant argues that Plaintiff's new allegations contradict its earlier pleaded facts, and it asks the Court to consider the prior pleaded facts in granting its motion to dismiss. However, Defendant does not cite to any case law suggesting that consideration of prior pleaded facts on a motion to dismiss is appropriate. Defendant cites only to case law addressing a jury's consideration of pleadings as evidence *See* Borel v. U.S. Cas. Co., 233 F.2d 385, 387 (5th Cir. 1956) ("A superseded pleading is of course not a conclusive admission of the statements made therein, and is not properly considered by a fact-finder unless introduced in evidence.").

hand, argues that the tripping that began in 2019 shortly after installation was sufficient to put Plaintiff on notice of its redhibition claim.

The threshold question then is when Plaintiff knew or should have known of the existence of the defect.

> Constructive knowledge has been defined by our courts as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription. In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, this court's ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances.[11]

"The prevailing wisdom is that prescription begins to run when the defect manifests itself, not on the date the underlying cause of the defect is found."[12]

Viewing the Third Amended Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff had constructive knowledge of a tripping issue in Transformer A as of July 2022, the first time it is alleged to have tripped. Likewise, Plaintiff had constructive knowledge of a tripping issue in Transformer B as of October 2023, the first time it is alleged to have tripped. At this point, Plaintiff had sufficient notice "to excite attention" because it contacted Defendant for repair.[13] Assuming that prescription began running

---

[11] Hogg v. Chevron USA, Inc., 45 So. 3d 991, 997–98 (La. 2010) (internal quotations omitted).

[12] Am. Zurich Ins. Co. v. Caterpillar, Inc., 99 So. 3d 739, 741 (La. App. 3 Cir. 2012).

[13] Atl. Specialty Ins. Co. v. Caterpillar Inc., No. CV 20-1863, 2021 WL 4845771, at *6 (E.D. La. Oct. 18, 2021).

from these dates, Plaintiff's rehibition claims would have been prescribed by the time it filed this matter on September 5, 2025, unless prescription was interrupted by Defendant's attempts at repair.

As to Transformer A, prescription began running in July 2022 when Plaintiff had constructive knowledge of the tripping issue. The Third Amended Complaint alleges that Defendant attempted to repair the tripping in February 2023. Accordingly, prescription "commence[d] anew" when the transformer was tendered back to Plaintiff. Therefore, the one-year prescription period began again in February 2023. The Third Amended Complaint again alleges that Transformer A tripped and repairs were undertaken around September 25, 2023 and again in October 2023. Repairs were again undertaken in January 2024, therefore restarting the prescriptive period once again.

As to Transformer B prescription began running in October 2023 when Plaintiff had constructive knowledge of the tripping issue. Repairs were attempted at that time. Defendant again undertook repairs in January 2024.

In January 2024, Plaintiff requested that both units be tested to determine how to solve the SPR tripping issue. Defendant indicated that it would follow up with the manufacturer. On September 5, 2024, Defendant informed Plaintiff that the transformers were not defective and that any tripping was the result of external factors.

Defendant argues that its January 2024 agreement to inspect the SPR tripping issue and conclusion that there is no defect is not an acceptance for repairs that interrupts prescription. This Court disagrees. Pursuant to the allegations of the Third Amended Complaint, Defendant undertook an effort to speak with the manufacturer, met regarding Plaintiff's request, and

ultimately notified Plaintiff of its "refusal or inability to make the required repairs."[14] Accordingly, the Court finds that Plaintiff has sufficiently alleged that prescription was interrupted by Defendant's January 2024 agreement to investigate the cause of the SPR trips and began anew as of its September 5, 2024 refusal to make repairs. However, the Court also notes that this issue presents questions of fact that are not susceptible to resolution on the face of the pleadings.[15] That said, based on the allegations of the Third Amended Complaint, Plaintiff has sufficiently alleged that its September 5, 2025 filing was timely, and dismissal on these grounds is inappropriate at this stage.

**B. Breach of Contract of Express Warranty**

Defendant next moves to dismiss Plaintiff's breach of contract claim. Plaintiff's Third Amended Complaint alleges that Defendant breached its express contractual obligations by failing to provide transformers that performed in accordance with the contract and by failing to remedy the covered defects that occurred during the warranty periods. As this Court previously held, Plaintiff's breach of express warranty claim is based on hidden defects and therefore must be brought as an action for redhibition. "It is 'fundamental Louisiana law' that actions based on breach of warranty against defects are to be pursued in redhibition instead of as a breach of contract."[16] Accordingly,

---

[14] LA CIV. CODE art. 2534.

[15] First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc., 178 F. Supp. 3d 390, 403 (E.D. La. 2016).

[16] Leo v. Jeld-Wen, Inc., 835 F. App'x 727, 731 (5th Cir. 2020).

Plaintiff cannot repackage its redhibition claim into a breach of contract claim. This claim is dismissed.

**C. Breach of Warranty of Fitness**

Finally, Defendant moves to dismiss Plaintiff's claim for breach of warranty of fitness under Article 2524. Plaintiff argues that, in the event the transformers are found not to have a redhibitory defect, the transformers were not fit for their ordinary use and were not capable of performing the task for which they were sold. Defendant argues that this claim should be dismissed because (1) it is prescribed and (2) Article 2524 is available only when the thing is free from redhibitory defects.

At the outset, the parties disagree about the prescriptive period for a claim under article 2524. In 2021, article 2534 was amended to provide that "the action asserting that a thing is not fit for its ordinary or intended use prescribe in two years from the day of delivery of the thing to the buyer or one year from the day the defect or unfitness was discovered by the buyer, whichever occurs first." "Prior law provided no specific prescriptive period for breach of the warranty of fitness for use. Consequently, the ten-year prescription in Article 3499 prevailed."[17] Plaintiff argues that the ten-year period applies because the contract of sale was perfected in 2017 and the transformers were delivered in 2019, prior to the 2021 amendment to Article 2534.

Under Louisiana law,

> A prescriptive period is generally treated as procedural and applied retroactively. However, when the claim has prescribed, the

[17] 2021 La. Sess. L. Serv. Act 414 (H.B. 81).

> defendant acquires the right to plead the exception of prescription, and a change in that right constitutes a substantive change in the law as applied to the defendant. Thus, "(t)he revival of an already prescribed claim presents additional concerns ..."[18]

Here, there is no concern about reviving a prescribed claim. Accordingly, the prescriptive period set out in Article 2534 applies. Because it has been two years since the transformers were delivered, Plaintiff's claim for breach of warranty of fitness is prescribed. This Court need not consider the other arguments for dismissal.

When granting a Motion to Dismiss, the Court must consider whether the plaintiff should be given leave to amend the complaint. Though "[l]eave to amend should be freely given," a court may decline to give such leave as long at the denial is justified on grounds of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[19] The court finds that Plaintiff has had multiple chances to amend its Complaint, and further amendment would be futile.

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED IN PART**. Plaintiff's breach of contract claims are **DISMISSED WITH PREJUDICE.** Only Plaintiff's redhibition claim survives.

---

[18] Matter of Brinkman, 717 So. 2d 681, 682 (La. App. 4 Cir. 1998).

[19] U.S. *ex rel.* Adrian v. Regents of Univ. of California, 363 F.3d 398, 403 (5th Cir. 2004).

New Orleans, Louisiana this 23rd day of November, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**